IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SAVE HISTORIC AMERICAN BEACH INC.,
a Florida Nonprofit Corporation,

        Plaintiff,

v.

NASSAU COUNTY, FLORIDA, a
Political Subdivision of the State of Florida,

        Defendant.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Case No.: 25-467

## INTRODUCTION

1. Save Historic American Beach Inc. ("SHAB") challenges unincorporated Nassau County (the "COUNTY") to address ongoing violations of the Endangered Species Act ("ESA") arising out of the take of protected sea turtles on historic American Beach that is currently being sanctioned by official acts, including an Ordinance, of the Nassau County Board of County Commissioners.

2. The beaches of northeast Florida are considered an important nesting area for both Loggerhead (<u>Caretta caretta</u>) and Green (<u>Chelonia mydas</u>) sea turtles that are protected under the Endangered Species Act. See 50 C.F.R. § 17.11.

1

3. The COUNTY has passed ordinances permitting and regulating motor vehicle use on the beach at American Beach. See, e.g., Nassau County, Fla., Code of Ordinances Ch. 23½ § 23½-11 (2020).

4. The COUNTY permits vehicular traffic and vehicle parking on the beach at American Beach. Once vehicles drive through the historic residential community of American Beach and pass the gate station at Lewis Street, there is almost no signage regulating where vehicles drive or park besides posts that have been placed directly at the foot of the dunes to indicate the western or landward boundary where vehicles can drive and park. (See photo below.)



5. Sea turtle hatchlings have been killed by motor vehicle traffic on the beach at American Beach. (See photo below of a Loggerhead sea turtle hatchling runover on the beach at American Beach.)



6. Beach driving also sometimes causes ruts and tire tracks in the sand, which can inhibit sea turtle hatchlings that are making their way to the ocean. (See photo below.)



7. Additionally, driving on the beach compacts the sand, which can be damaging to sea turtle eggs and can make it harder to identify and protect nests.

8. The COUNTY has not made adequate efforts to "monitor, minimize, and mitigate the impacts" of its beach-driving policies resulting in a "taking" of endangered sea turtles, 50 C.F.R. § 222.307(c)(2)(ii).

9. Although a COUNTY official has publicly acknowledged the need for an Incidental Take Permit ("ITP") during past public meetings, the COUNTY has not applied for an Incidental Take Permit ("ITP") under the ESA. See 16 U.S.C. § 1539(a)(1)(B).

10. Both past and foreseeable collisions of motor vehicles with sea turtles at American Beach, in addition to the potentially deadly effects of sand compaction on sea turtle eggs in their nests, make it reasonably likely that these vehicles will continue to harm, harass, wound, and kill protected turtles in violation of the Endangered Species Act.

11. Plaintiffs seek declaratory and injunctive relief to end these violations of the ESA.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to Section 9 of the ESA, 16 U.S.C. § 1538, 16 U.S.C. §§ 1540(c) and (g) (action arising under the ESA and citizen-suit provision) for the "take" of ESA-protected turtles on American Beach.

13. This Court has authority to grant SHAB's requested relief pursuant to 28 U.S.C. §§ 2201–2202 (declaratory judgment and injunctive relief).

14. More than sixty days ago, SHAB furnished the COUNTY, the U.S. Fish and Wildlife Service, the U.S. Department of Commerce, the National Ocean and Atmospheric Administration, and the Department of the Interior with written notice of the ESA violations alleged in this Complaint and of its intent to sue. See 16 U.S.C. § 1540(g) (requiring sixty days' notice prior to bringing a citizen suit). A notice of violation and intent to file suit ("Notice of Intent") is attached hereto as Exhibit A and the certified mail receipts for the mailing of the Notice of Intent to the COUNTY and required regulatory agencies listed above is attached hereto as Exhibit B.

15. The COUNTY has not taken the actions necessary to remedy its ongoing violations of the ESA. Therefore, an actual controversy exists between

the parties within the meaning of the Declaratory Judgment Act. 28 U.S.C. § 2201.

16. Venue properly lies in this judicial district by virtue of 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391. The violations of the ESA are occurring on the beaches within this judicial district, the COUNTY's actions of passing and enforcing beach-driving policies occur in this judicial district, and the COUNTY's office is located in Nassau County, Florida, in this judicial district.

## PARTIES

17. Plaintiff SAVE HISTORIC AMERICAN BEACH INC. ("SHAB"), a 501 c 3 nonprofit organization sues on behalf of itself and its Board of Directors. SHAB is committed to protecting the area's threatened wildlife and the fragile ecology of Historic American Beach. Located along the picturesque shores of Northeast Florida in Nassau County lies a half mile-long enclave of homes and historic structures known as American Beach. Listed on the national register of historic places, American Beach was founded in 1935 as a sanctuary for African American families at a time when they were often denied access to public amenities, including beaches. Today, American Beach remains a symbol of cultural heritage and resilience.

18. SHAB's board of directors all reside oceanfront or near the beach at American Beach and would each have individual standing to bring this citizen suit. The Board of Directors of SHAB are deeply concerned about the protection

of Loggerhead and Green sea turtles on American Beach. SHAB's board members use American Beach for activities such as sunbathing, swimming, fishing, and walking and will continue to do so. They also enjoy taking their children and grandchildren to observe sea turtle nests, always hoping to witness the brave hatchlings try to make their way back to the sea, continuing their ancient cycle of life. SHAB's Board of Directors have a substantial interest in the conservation of the Loggerhead and Green sea turtles. The interests of the SHAB's members have been, are being, and will continue to be adversely affected by the take of ESA-protected turtles on American Beach as a result of the COUNTY's beach driving ordinance and policies. The requested relief would serve to redress the injuries of SHAB and its members.

19. Nassau County, a political subdivision of the state of Florida, is a non-charter county located within the State of Florida. The Nassau County Board of County Commissioners have the flexibility to adopt regulations and ordinances unless they are prohibited by or in conflict with state law. The County has adopted ordinances related to beach driving, including Section 23 ½ -11, "Motorized vehicles on the Atlantic Ocean beaches." SHAB recognizes and commends that the COUNTY has a beachfront lighting ordinance and has a dedicated Sea Turtle Patrol. Nevertheless, the COUNTY's failure to develop an adequate conservation plan (to minimize harm to sea turtles caused by beach driving at American Beach) has resulted in the "take" of ESA-protected sea

turtles on American Beach and is also reasonably likely to result in the take of ESA-protected sea turtles in the future. See 16 U.S.C. § 1538.

## THE ENDANGERED SPECIES ACT

20. In 1973, Congress passed the ESA to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered and threatened species …." 16 U.S.C. § 1531(b). The ESA defines "conservation" as "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the ESA] are no longer necessary." 16 U.S.C. § 1532(3). Accordingly, the ultimate goal of the ESA is not only to temporarily save endangered and threatened species from extinction but also to recover these species to the point where they are no longer in danger of extinction and no longer need ESA protection.

21. A species is "endangered" if it is "in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is "threatened" if it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(16).

22. The U.S. Fish and Wildlife Service has listed both Green and Loggerhead sea turtles as "threatened" species in the Northwest Atlantic Ocean. See 50 C.F.R. § 17.11.

23. The ESA prohibits any person from "taking" an endangered species. 16 U.S.C. § 1538(a)(1)(B). To "take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to engage in any such conduct." 16 U.S.C. § 1532(19). To fulfill the purposes of the ESA, section 9 of the ESA prohibits any "person" — including a corporation or other public entity — from "tak[ing]" any endangered species. 16 U.S.C. §§ 1532 and 1538(a)(1)(B).

24. This protection also extends to threatened species. 50 C.F.R. § 17.31.

25. It is also prohibited for a person to "cause" any prohibited act under the ESA "to be committed" by another. 16 U.S.C. § 1538(g).

26. The ESA's "take" prohibition therefore applies when a person allows or authorizes acts by another exacting a taking. Strahan v. Coxe, 127 F.3d 155, 163 (1st Cir. 1997). In Strahan v. Coxe, the First Circuit Court of Appeals found that a local government entity violated the ESA when its fishing licensure scheme's permitting process allowed for activity which harmed endangered whales. Id.

27. Nassau County is empowered by the State of Florida to regulate vehicular access to its beaches. See Fla. Stat. Ann. § 161.58 (West 1990). Pursuant to this power, the COUNTY allows vehicular access to and driving upon the

8

beach at American Beach. See Nassau County, Fla., Code of Ordinances ch. 23½ § 23½-11 (2020).

28. The District Court for the Middle District of Florida has specifically stated, in another case where a county's ordinances allowed driving on its beaches where Green and Loggerhead sea turtles nested: "[S]ince [the] County has the authority to regulate vehicular access to its beaches, and since [the] County permits others to drive upon its beaches, [the] County assumes the responsibility for ensuring that those vehicles do not 'take' federally protected species." Loggerhead Turtle v. County Council of Volusia County, Fla., 896 F. Supp. 1170, 1181 (M.D. Fla. 1995). The court further noted that among the threats beach driving poses to sea turtles are tire ruts, compaction, and collision. Id. at 1175.

29. Among the hazards posed by tire ruts in the sand, the court described:

> Hatchlings climbing over a rut may fall upon their backs and be stranded, inverted, for critical minutes while they attempt to right themselves. Hatchling sea turtles, having entered a tire rut, also have been observed to follow the tire rut to wherever it leads, rather than to pursue a course to the ocean. In both of these cases, the hatchlings are exposed for prolonged periods of time, and not uncommonly expire from dehydration, depredation, or are run over.

Id.

30. Regarding the perils of sand compaction, the court enumerated:

> A vehicle which passes over a clutch of sea turtle eggs can cause one or more of the following life-threatening conditions: (1) increased pressure on the sand above the eggs, causing the paper-thin eggshells to burst and the developing

embryos to perish; (2) increased pressure on the sand above the eggs, causing sand to be forced into the air spaces between eggs, decreasing the oxygen which can diffuse into the eggs and resulting in increased embryo mortality; (3) increased pressure on the sand above the eggs, crushing hatchlings that have come out of their shell but have not yet emerged from the nest; and (4) displacement of sand, exposing eggs to the elements and to predators, decreasing nesting success.

Id.

31. If otherwise lawful activity incidentally results in a prohibited taking, the ESA requires the person or entity engaged in the activity to secure an ITP under § 10(a)(1)(b) of the Act. See 16 U.S.C. § 1539 ("The Secretary may permit . . . any taking otherwise prohibited by section 9(a)(1)(B) if such taking is incidental to, and not the purpose of, the carrying out of an otherwise lawful activity."); 50 C.F.R. § 222.307 (allowing the relevant federal agency to "issue permits to take endangered and threatened species incidentally to an otherwise lawful activity under section 10(a)(1)(B) of the Act").

32. The government can require applicants for ITPs to engage in mitigation actions that reduce the risk of incidental take. See, e.g., 50 C.F.R. § 222.307(c)(2)(ii).

33. Before issuing an ITP, the government must ensure that the applicant has planned for mitigation efforts. Specifically, the applicant must demonstrate that the applicant will, "to the maximum extent practicable, monitor, minimize, and mitigate the impacts" of incidental take. 50 C.F.R. § 222.307(c)(2)(ii).

34. The applicant must also prepare a Habitat Conservation Plan ("HCP"), which must include any measures the government agencies determine are "necessary or appropriate." Id. § 222.307(c)(2)(iv); see 50 C.F.R. § 222.102.

35. The ESA's citizen-suit provision allows any person to commence a civil suit on his or her own behalf to enjoin any person alleged to be in violation of any provision of the ESA or regulation issued under the ESA. 16 U.S.C. § 1540(g).

36. When considering the entry of an injunction under the ESA, the court will not have the "traditional equitable discretion" to balance the parties' interests. Rather, any threatened harm is per se irreparable harm, and the public interest always favors the imposition of an injunction under the Act. See, e.g., Tenn. Valley Auth. v. Hill, 437 U.S. 153, 174, 184; accord National Wildlife Fed'n v. Burlington N.R.R., 23 F.3d 1508, 1511 (9th Cir. 1994).

## STATEMENT OF FACTS

### I. Loggerhead and Green Sea Turtles

37. The beaches of northeast Florida are considered an important nesting area for protected Loggerhead (Caretta caretta) and Green (Chelonia mydas) sea turtles. See 50 C.F.R. § 17.11(h) (listing endangered and threatened species) and 50 C.F.R. § 17.31 (protecting threatened species).

38. On American Beach, Green and Loggerhead sea turtles often lay their eggs on the seaward edge of the dunes, sometimes in the dunes, and sometimes

11

farther seaward. Threats to Nassau County's nesting sea turtles caused by beach driving include hatchlings being run over and becoming disoriented while navigating ruts in the sand caused by tires. See Loggerhead Turtle, 896 F. Supp at 1175. Sand compaction from vehicles driving over nests can also lead to crushed eggs and suffocated embryos. See id.

39. Green turtle nesting in Florida occurs primarily from June through late September. Florida Fish and Wildlife Conservation Commission, Green Turtle Nesting in Florida, https://myfwc.com/research/wildlife/sea-turtles/nesting/green-turtle/ (last visited April 14, 2025).

40. Loggerheads typically nest in Florida from April to September. Florida Fish and Wildlife Commission, Loggerhead Nesting in Florida, https://myfwc.com/research/wildlife/sea-turtles/nesting/loggerhead/#:~:text=Loggerheads%20typically%20nest%20in%20Florida,14%20days%20(Witherington%20et%20al. (last visited April 14, 2025).

## II. The "Take" of ESA Protected Sea Turtles on American Beach

41. The Nassau County Board of County Commissioners have the flexibility to adopt regulations and ordinances unless they are prohibited by or in conflict with state law. Nassau County has adopted ordinances related to beach driving, including Section 23½ - 11, entitled "Motorized vehicles on the Atlantic Ocean beaches."

42. The COUNTY's beach driving policies allow vehicles to drive and park right up to the boundary posts at the toe of the dunes at American Beach. See Nassau County, Fla., Code of Ordinances Ch. 23½ § 23½-11 (2020).

43. Following Tropical Storm Nicole in November of 2022, the COUNTY took further damaging action when it moved the boundary for vehicles even farther landward following the loss of dunes caused by this storm. Vehicles may now park directly where sea turtle eggs once hatched. This alarming encroachment into where sea turtles lay their eggs has become especially frequent and intrusive during periods of high tide when cars have no other option but to drive and park near the toe of the dunes. (See photo below.)



44. The COUNTY's policies regarding vehicular driving on American Beach have resulted in the harming of sea turtles. On September 29, 2020, American Beach resident Anthony Shipman took several photos (see two of the photos below) of a loggerhead hatchling that was killed by a motor vehicle on the beach at American Beach. An affidavit providing additional information about this alleged take is attached as Exhibit C.




45. On a separate occasion in the summer of 2024, Adam Lovallo and his family saw a dead sea turtle hatchling that had been killed by a motor vehicle on the beach at American Beach. An affidavit providing additional information about this alleged take is attached as Exhibit D.

46. Although we do not know who was driving the vehicles that killed these turtle hatchlings, the COUNTY's beach driving policies provided the actor driving the motor vehicle who killed the hatchlings with permission to drive on American Beach and therefore allowed the harm to occur. See 16 U.S.C. § 1539(a)(1)(B) and § 1539(g); see also Loggerhead Turtle, 896 F. Supp. at 1181.

47. "In order for regulatory acts to result in ESA liability, there must be a close connection between the liable actor's conduct and habitat destruction or killing of endangered species." Fla. Panthers v. Collier Cnty., Fla., No. 2:13-cv-612-FtM-29DNF, 2016 WL 1394328, at *22 (M.D. Fla. Apr. 8, 2016) (emphasis added) (citing Aransas Project v. Shaw, 775 F.3d 641, 659 (5th Cir. 2014)).

48. Motor vehicles continue to be driven on the beach at American Beach under the COUNTY's ordinances and beach driving policies and there is a close connection between the COUNTY's conduct in permitting the beach driving and the foreseeable take of these protected sea turtles.

49. "As an exception to the prohibition against a 'take,' Congress allows the Secretary of the Interior, acting through the United States Fish and Wildlife Service (FWS), to issue a permit . . . which allows an otherwise prohibited taking 'if such taking is incidental to, and not the purpose of, the carrying out of an otherwise lawful activity.'" Fla. Panthers, 2016 WL 1394328, at *1 (footnote omitted) (citation omitted). Under 16 U.S.C. § 1539(a)(1)(B), the Secretary of the Interior may issue an ITP that authorizes takings that are "incidental to, and not the purpose of, the carrying out of an otherwise lawful activity." "An ITP is issued by the U.S. Fish and Wildlife Service ('FWS') after the development and approval of a Habitat Conservation Plan ('HCP')." Aransas Project, 775 F.3d at 646 (footnote omitted). "HCPs must include, among other things, information regarding the applicant's plan to 'minimize and mitigate' the impacts likely to result from incidental takes." Id. (quoting 16 U.S.C. § 1539(a)(2)(A)(ii)).

50. Before issuing an ITP, U.S. Fish and Wildlife would be required to ensure that Nassau County has planned for adequate mitigation efforts by demonstrating that the County would, "to the maximum extent practicable,

15

monitor, minimize, and mitigate the impacts of incidental take." 50 C.F.R. § 222.307(c)(2)(ii).

51. In a workshop of the Nassau County Commissioners on January 16, 2020, Michael Mullin, the acting County Manager and County Attorney, informed the COUNTY that coastal counties that have endangered species on the beach must have an HCP and ITP if they permit beach driving on their beaches. Mr. Mullin provided substantial details regarding the HCP in St. Johns, Flagler, and Volusia counties and discussed the myriad of conservation-based policies in place in those counties. He even stated that bids had been solicited for the development of an HCP/ITP for Nassau County. (Nassau County Board of Commissioners, Workshop Session, January 16, 2020, Minutes, Agenda, and Recorded Meeting, https://nassaufl.granicus.com/player/clip/876?view_id=2&redirect=true (last visited Apr. 14, 2025). Furthermore, we have attached as Exhibit E an email from 2020 in which a U.S. Fish and Wildlife service official emailed Nassau County residents and wrote that U.S. Fish and Wildlife had participated in a preliminary meeting with the City of Fernandina Beach and Nassau County to discuss what they need to do to get started with the development of an HCP and also acknowledged that Nassau County and/or the City of Fernandina Beach had already sent out a request for proposals to get help in drafting the HCP. As of

the date of filing this complaint, there is no record that the COUNTY has developed an HCP or applied for an ITP.

52. The COUNTY's failure to develop an adequate conservation plan to minimize harm to sea turtles caused by beach driving at American Beach has resulted in the take of ESA-protected sea turtles on American Beach and is reasonably likely to result in the take of ESA-protected sea turtles in the future. See 16 U.S.C. § 1539(a)(1)(B) and § 1539(g); see also Loggerhead Turtle, 896 F. Supp. at 1181.

53. As of the date of this filing, nesting season for Loggerhead sea turtles is already beginning for the year. Green sea turtle nesting is also beginning soon. Without an HCP and ITP in place, the COUNTY's current beach-driving policies are reasonably likely to pose a threat of irreparable harm to Loggerhead and Green sea turtles now and in the future. See Tennessee Valley Auth., 437 U.S. at 174, 184.

## CLAIM FOR RELIEF

54. The allegations of all preceding paragraphs of this Complaint are incorporated herein by reference.

55. The COUNTY has violated and will continue to violate the ESA, 16 U.S.C. §§ 1538(a)(1)(B), (g), and its implementing regulations, 50 C.F.R. §§ 17.11(h), 17.21(a), (c)(1), 17.31(a), (c), and 17.42(b), by harassing, harming, wounding, and killing — thereby taking — ESA-protected animals, including

17

Green and Loggerhead sea turtles, by allowing driving on the beaches where they nest and failing to establish and maintain adequate mitigation efforts to monitor, minimize, and mitigate the impacts of incidental take to the maximum extent practical.

56. Unless enjoined, the COUNTY is likely to continue to allow driving that will harm, harass, wound, or kill Green and Loggerhead sea turtles, thereby taking ESA-protected animals in violation of the ESA.

57. Plaintiff SHAB is entitled to an injunction enjoining the COUNTY from committing further ESA violations caused by permitting the driving and parking of motor vehicles on the beach at American Beach.

## REQUEST FOR RELIEF

WHEREFORE, SHAB respectfully requests that this Court enter judgment providing the following relief:

(A) A declaration that the COUNTY has violated the ESA as a result of the past take of sea turtles protected under the Endangered Species Act at American Beach and that it is reasonably likely that a take is likely to occur in the future without the COUNTY taking adequate mitigation efforts to demonstrate that the COUNTY has, to the maximum extent practicable, monitored, minimized, and mitigated the impacts of incidental take.

(B) An injunctive order stopping driving of motor vehicles on American Beach until adequate mitigation efforts, including obtaining an incidental take permit, have been completed;

(C) An order awarding SHAB its costs of litigation including reasonable attorneys' fees as provided by the ESA, 16 U.S.C. § 1540(g); and

(D) Such other and further relief as the Court deems just and proper.

Dated: April 29, 2025                    Respectfully submitted,

*John November*

John Henry November, Esq.
Florida Bar Number: 0088760
2029 Third Street North
Jacksonville Beach, Florida 32250
(904) 525-3042
(904) 247-5433 – facsimile
John@andersonnovember.com

/s/ Matthew Farmer
Matthew Farmer, Esq.
Fla. Bar No. 0793469
Farmer & Fitzgerald, P.A.
708 E. Jackson St. Tampa, FL 33602
(813) 228-0095
mattfarmer1@aol.com

/s/ Ralf Brookes
Ralf Brookes, Esq.
Fla. Bar No. 778362
Ralf Brookes Attorney
1217 East Cape Coral Parkway #107
Cape Coral, FL 33904
(239) 910-5464
Ralf@RalfBrookesAttorney.com

19